IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEAD-OFF MANAGEMENT, INC., | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-2060 |
| CONGO BRANDS HOLDING CO., INC., | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The instant dispute concerns Plaintiff Lead-Off Management, Inc. ("Lead-Off"), a beverage distributor, and Defendant Congo Brands Holding Co., Inc. ("Congo"), a producer and supplier of energy drinks and other beverages. (ECF No. 3 ¶¶ 7–8.)[1] In brief, Lead-Off alleges one count of promissory estoppel ("Count I") (*id.* ¶¶ 27–31), related to Congo's alleged repeated promises to Plaintiff that Congo would sign Lead-Off's standard distribution agreement (the "Distribution Agreement"); and one count of fraud ("Count II") (*id.* ¶¶ 32–37), related to Congo's alleged misrepresentations regarding the same.

Instantly before the Court is Congo's Motion to Dismiss (ECF No. 7) pursuant to Fed. R. Civ. P. 12(b)(6). Lead-Off responded in opposition (ECF No. 8), and Congo replied (ECF No. 11). The Court has reviewed the parties' submissions and finds that no hearing is

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

1

necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Congo's Motion to Dismiss (ECF No. 7) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 3), and accepted as true for the purpose of the Defendant's Motion to Dismiss (ECF No. 7).

### I. Background on Parties

Plaintiff Lead-Off Management, Inc. is a Maryland corporation with its principal place of business in Glenwood, Maryland. (ECF No. 3 ¶ 5.) "Lead-Off is an independent beverage distributor focused on growing and expanding the reach of new beverage brands." (*Id.* ¶ 7.) "As a distributor, Lead-Off maintains several relationships with local retailers, including Giant Supermarkets" in Maryland. (*Id.* ¶ 8.)

Defendant Congo Brands Holding Co., Inc. is a Delaware limited liability company with its principal place of business in Louisville, Kentucky. (*Id.* ¶ 6.) "Congo is a producer and supplier of energy drinks and other beverages." (*Id.* ¶ 8.)

### II. Factual Background

According to Plaintiff, sometime in late 2020, Congo approached Lead-Off related to efforts to "expand Congo's brand presence in the region and gain access to Giant supermarkets in its Carlisle Division, which represented approximately 150 stores." (*Id.* ¶ 10.)

Lead-Off alleges that its "standard practice is to enter a distribution agreement with suppliers" under such circumstances. (*Id.* ¶ 11.) Accordingly, Lead-Off allegedly requested that Congo sign such an agreement, and "[r]epresentatives of Congo promised Lead-Off that it would enter into Lead-Off's standard distribution agreement" (the "Distribution Agreement"). (*Id.* ¶ 11–12.)

Thereafter, Lead-Off allegedly repeatedly inquired as to the status of the Distribution Agreement and was repeatedly assured that an executed agreement would be forthcoming. (*Id.* ¶ 12.) Lead-Off further alleges that "[b]ased upon [Congo's] representations, Lead-Off continued to work to ensure that Congo's brands would expand into Giant stores in the region and expended considerable resources and capital to do so." (*Id.* ¶ 13.)

Sometime in March 2021, "after much insistence," Lead-Off signed Congo's "Brokerage Agreement."[2] (*Id.* ¶ 14.) In its Complaint (ECF No. 3), Lead-Off emphasizes that it is a "distributor," "not a broker," (*id.* ¶ 14), and further states that the Brokerage Agreement "fails to establish compensation terms relevant to the relationship between the parties" and "does not contain any salient terms." (*Id.* ¶¶ 15.)

In early April 2021, Congo products were delivered to Giant stores' Carlisle Division. (*Id.* ¶¶ 10, 16, 22.) According to Plaintiff, after working with and using Lead-Off's resources "for several months," "Congo severed the relationship [with] Lead-Off." (*Id.* ¶ 17.) Lead-Off alleges that the parties "agreed" the Brokerage Agreement between them "was terminated on March 17, 2022." (*Id.* ¶ 18.)

---

[2] The Complaint indicates that the Brokerage Agreement was "attached as Exhibit A." (ECF No. 1-1 ¶ 14.) However, the Brokerage Agreement does not appear on this Court's docket.

3

Lead-Off alleges that, sometime thereafter, "Congo encountered complications with Giant's management team and reapproached Lead-Off for guidance on how to navigate the situation." (*Id.* ¶ 19.) Lead-Off allegedly "again asked that Congo enter into the Distribution Agreement," and Congo again "promised" it would do so. (*Id.* ¶ 20.) Lead-Off further alleges that it "relied on Congo's representations and devoted substantial time and energy to aid Congo achieve its distribution goals," including getting Congo's brands into Giant stores' Landover Division, which accounted for an additional 150 stores. (*Id.* ¶¶ 21–22.) "Based on Congo's representations that it would enter the Distribution Agreement, Lead-Off continued purchasing and delivering products to Giant until October 2, 2023, when it became clear Congo would never enter [the] agreement." (*Id.* ¶ 23.) Lead-Off complains that it forewent the opportunity to provide distribution services for other brands in order to service the volume generated by Congo, and alleges that it "took this step in reliance on the promises made by Congo that it would enter into a Distribution Agreement." (*Id.* ¶ 24.) According to Lead-Off, "Congo's former executives have acknowledged that Congo made promise after promise to enter into the Distribution Agreement, convinced Lead-Off to take certain actions in reliance on this promise and then never had any intention to enter into such an agreement." (*Id.* ¶ 25.) Lead-Off further claims to have spent $1,499,700.00 on product and distribution based on Congo's alleged misrepresentations. (*Id.* ¶ 26.)

### III. Procedural History

On June 24, 2024, Plaintiff filed the instant action in the Circuit Court for Howard County, Maryland. (ECF No. 3.) On July 17, 2024, Defendant removed the case to this Court, invoking the Court's diversity jurisdiction 28 U.S.C. § 1332. (ECF No. 1.) Defendant

4

subsequently filed the instant Motion to Dismiss (ECF No. 7). Lead-Off responded in opposition (ECF No. 8), and Congo replied (ECF No. 11). The motion is ripe for review.

## STANDARD OF REVIEW

### I.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346

(4th. Cir. 2011).

## II.    Federal Rule of Civil Procedure 9(b)

Congo also moves to dismiss Count II under Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b); *see Iqbal*, 556 U.S. at 686 ("Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'"); *Mylan Lab., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991) (explaining the rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists"). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). "These circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). They are often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted).

## III.    Applicable Law

Plaintiff pursues its common law promissory estoppel and fraud claims, over which this Court has diversity jurisdiction. 28 U.S.C. § 1332. "When choosing the applicable state

6

substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). Maryland is the forum state.

In contract type actions, of which a claim for promissory estoppel is one, *see Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Dep't of Transp.*, 5 A.3d 1174, 1226–27 (Md. App. 2010), *rev'd on other grounds*, 21 A.3d 1098 (Md. 2011), Maryland courts "apply the substantive law of the place where the contract was made." *Cont'l Cas. Co. v. Kemper Ins. Co.*, 920 A.2d 66, 69 (Md. App. 2007). For common law torts, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred. *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648–49 (Md. 2007); *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006); *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). For economic torts such as fraud, Maryland courts view the injuries as occurring "where the injured party resides." *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2017 U.S. Dist. LEXIS 1827, at *7–8 (D. Md. Jan. 5, 2017). The parties aptly assume, albeit without discussion, that Maryland law applies to both claims. Accordingly, the Court applies Maryland law to both counts.

## ANALYSIS

Through the two-count Complaint, Lead-Off alleges one count of promissory estoppel (*id.* ¶¶ 27–31), related to Congo's alleged repeated promises to Plaintiff that it would sign Lead-Off's standard distribution agreement (the "Distribution Agreement"); and one count

of fraud (*id.* ¶¶ 32–37), related to Congo's alleged misrepresentations regarding the same. Through the pending Motion to Dismiss (ECF No. 7), Congo seeks dismissal of both counts pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    Lead-Off's Claim for Promissory Estoppel

The Court first considers the Plaintiff's promissory estoppel claim. To state a claim for promissory estoppel or detrimental reliance[3] under Maryland law, a plaintiff must allege:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 451 (D. Md. 2013), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F. App'x 165 (4th Cir. 2013) (quoting *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)). "Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise." *Id.* (quoting *Edell & Assocs., P.C. v. L. Offs. of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001)).

Congo contends that Lead-Off's Complaint does not satisfy a single element required under Maryland law to support a claim for promissory estoppel, (ECF No. 7-1 at 6–10; ECF No. 11 at 1–7), and further that the Statute of Frauds precludes Lead-Off's promissory estoppel claim, (ECF No. 7-1 at 10; ECF No. 11 at 7–8). Plaintiff insists that its Complaint sufficiently alleges promissory estoppel, pointing to Congo's alleged March 2022 promise to

---

[3] "Maryland courts, which disapprove of the term 'promissory estoppel,' have incorporated the Restatement (Second) on Contracts to adopt the analogous doctrine of 'detrimental reliance[.]'" *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 348 (4th Cir. 2006) (citing *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)).

8

Lead-Off that it would sign the Distribution Agreement, (ECF No. 8 at 4–5); that Congo's argument regarding the reasonableness of Lead-Off's reliance is not appropriate at the 12(b)(6) stage, (*id.* at 5–8); similarly, that Congo's argument relating to Lead-Off's reliance damages is not appropriate at the 12(b)(6) stage, (*id.* at 8–9); and that the Statute of Frauds is inapplicable to the parties' oral agreement, (*id.* at 9–10).

Through its Complaint, Lead-Off alleges that Congo repeatedly represented that it would sign the Distribution Agreement, and that Congo "reasonabl[y] expect[ed] that its continued promise of signing a distribution agreement would lead Plaintiff to act and work with Giant to supply and distribute Defendant's products." (ECF No. 3 ¶¶ 28–31.) Lead-Off alleges that it did do just that, and that it suffered a detriment as a result. (*Id.*) Thus, the only possible basis for Lead-Off's promissory estoppel claim is Congo's alleged repeated representations that it would sign the Distribution Agreement. This proves fatal to Count I, as the Court cannot find that there was a "clear and definite promise," i.e., "one that reasonably defines the contours of the action or forbearance," made to Lead-Off that Congo would sign the Distribution Agreement. *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981)); *see also Dunnaville v. McCormick & Co., Inc.*, 21 F. Supp. 2d 527, 534–35 (D. Md. 1998) (finding no clear and definite promise "because so many important terms of the transaction were up in the air").

With respect to the second element, whether Lead-Off has alleged a reasonable expectation by Congo that the promise would induce action, and the third element, whether Lead-Off has alleged that the promise did induce actual and reasonable action, Congo claims that "Lead-Off cannot have reasonably changed its position as a matter of law based on a

9

purported oral promise that lacked any definite or enforceable terms." (ECF No. 7-1 at 8–9; *see also* ECF No. 11 at 4–6.) However, as Plaintiff aptly notes, (ECF No. 8 at 5–8), "[o]rdinarily, the matter of reasonableness of reliance is an issue reserved for the finder of fact." *200 N. Gilmor, LLC v. Cap. One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 491 (D. Md. 2012). While there may be instances, however, when a party's reliance on an oral promise may be "unreasonable as a matter of law," *id.*, the Court is unprepared to say that is the situation here at the 12(b)(6) stage. *See D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F.Supp.2d 818, 824 (D. Md. 2004) (determining where the express terms of the contract contradicted the alleged oral promise, it was "unfathomable" that a sophisticated business entity would not require the promise to be expressed in writing). The same goes with respect to the fourth element, whether Lead-Off has sufficiently asserted a resulting detriment that can only be avoided by the enforcement of the promise. *Pavel Enters.*, 674 A.2d at 532.

With respect to the Defendant's Statute of Frauds argument, Congo argues that "[t]he theory of promissory estoppel [] can not be used to overcome the Statute of Frauds defense when the detriment results solely from defendant's failure to perform under the oral agreement," citing *Labrecque v. Sunbird Boat Co.*, 873 F. Supp. 946, 951–52 (D. Md. 1994). (ECF No. 7-1 at 10.) "Lead-Off cannot use the doctrine of promissory estoppel to enforce its purported agreement with Congo which would otherwise be barred by Maryland's Statute of Frauds." (*Id.*) In its Motion, Congo appears to rely on MD. CODE, CTS. & JUD. PROC. § 5-901(3), which provides that the Maryland Statute of Frauds bars the enforcement of oral contracts that cannot be fully performed within one year, (ECF No. 7-1 at 10); though Congo appears to rely on MD. CODE, COM. LAW § 2-201, which requires a writing (1) that

10

demonstrates a contract for a sale of goods for the price of $500 or more; (2) is signed by the parties; and (3) contains a quantity term, in its reply. (ECF No. 11 at 7–8.) Simply stated, the Court cannot at this stage find that the Statute of Frauds is a bar under the facts in this case, where Plaintiff merely complains that Congo promised to sign a Distribution Agreement but failed to do so.

As such, Defendant's Motion to Dismiss (ECF No. 7) must be GRANTED with respect to Count I, though the Court will DISMISS the Plaintiff's promissory estoppel claim WITHOUT PREJUDICE.

## II.   Lead-Off's Fraud Claim

Turning to Count II, a common law fraud claim in Maryland requires the following: that "1) the defendant made a false representation to the plaintiff, 2) its falsity was either known to the defendant or the representation was made with reckless indifference as to its truth, 3) the misrepresentation was made for the purpose of defrauding the plaintiff, 4) the plaintiff relied on the misrepresentation and had the right to rely upon it, and 5) the plaintiff suffered compensable injury resulting from the misrepresentation." *Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d 486, 493 (D. Md. 2009).

As noted, a claim in fraud is held to the heightened pleading standard of Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In order to meet this heightened pleading standard, a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *My Nat'l Tax & Ins. Servs., Inc. v. H&R Block Tax Servs., Inc.*, 839 F.

11

Supp. 2d 816, 818 (D. Md. 2012) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).  "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *Wilson*, 525 F.3d at 379).  A "lack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." *Dunn v. Borta*, 369 F.3d 421, 426 (4th Cir. 2004) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

Plaintiff appears to argue that the alleged misrepresentations occurred "[b]etween when Congo reapproached Lead-Off [sometime after March 17, 2022] and October 2, 2023, which is when Lead-Off stopped purchasing and delivering Congo's products to Giant, Congo promised Lead-Off that it would sign the distribution agreement." (ECF No. 8 at 12 (citing ECF No. 3 ¶¶ 20, 22); *see also* ECF No. 3 ¶¶ 18–19.)  Plaintiff further emphasizes that "Congo's former executives have acknowledged that Congo made promise after promise to enter into the Distribution Agreement." (ECF No. 8 at 12 (citing ECF No. 3 ¶ 25).)

Congo falls woefully short of the heightened pleading standard set forth in Rule 9(b).  Lead-Off relies on the same set of facts as provided in Lead-Off's promissory estoppel claim to advance its fraud claim.  To summarize, Lead-Off alleges that "Congo made false representations to Lead-Off when it promised it would enter into a Distribution Agreement," and that while Congo never intended to do so, it misrepresented its intentions in order to use Lead-Off's expertise and access to Giant stores in the region." (ECF No. 3 ¶¶ 33–37.).  Plaintiff further alleges that it relied on Congo's misrepresentations to its detriment. (*Id.*)  However, in order to allege an affirmative misrepresentation, Lead-Off is required to provide more detail regarding the misrepresentations rather than just a vague, abstract allegation that

12

misrepresentations existed. Without any factual allegations providing any level of specificity, Lead-Off has not adequately pled affirmative misrepresentations. As Judge Chasanow of this Court has noted, "[t]he mere failure of promised performance does not, in and of itself, convert a breach of contract claim into a claim for fraud." *K.C. Co. v. Pella Corp.*, No. DKC-20-0227, 2021 U.S. Dist. LEXIS 16335, at *20 (D. Md. Jan. 28, 2021) (quoting the opinion of Judge Blake of this Court in *Metro Ready Mix, Inc. v. Essroc Cement Corp.*, No. CCB-06-0538, 2007 U.S. Dist. LEXIS 32337, at *9 (D. Md. Apr. 25, 2007)). Lead-Off has simply failed to provide any basis for an allegation of fraud in this case. Accordingly, Count II will be DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 7) is GRANTED. As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a). Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). However, there is authority that leave to amend does not need to be granted unless requested by the plaintiff. *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015).

Through Lead-Off's Complaint, Plaintiff alleged two claims: one claim for promissory estoppel (Count I) and one claim for fraud (Count II). The fraud claim will be dismissed and

leave to amend will not be granted as to Count II, as any amendment would not survive a motion to dismiss as Lead-Off cannot form the proper basis of a fraud claim based on the facts alleged.  Nevertheless, the Court will allow Plaintiff to file an Amended Complaint with respect to Lead-Off's promissory estoppel claim.  Such filing shall be filed with this Court within fourteen days of this Opinion, i.e., by April 14, 2025.  Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment.  *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)).  Accordingly, while Count II is DISMISSED WITH PREJUDICE, the DISMISSAL of Count I will initially be WITHOUT PREJUICE.  If an Amended Complaint is not filed by April 14, 2025, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

    A separate Order follows.

Date: March 31, 2025                                                                     /s/
                                                                                Richard D. Bennett
                                                                                United States Senior District Judge