IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEAD-OFF MANAGEMENT, INC., | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-2060 |
| CONGO BRANDS HOLDING CO., INC., | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The instant dispute concerns Plaintiff Lead-Off Management, Inc. ("Lead-Off"), a beverage distributor, and Defendant Congo Brands Holding Co., Inc. ("Congo"), a producer and supplier of energy drinks and other beverages. (ECF No. 18 ¶¶ 7–9.)[1] In its original Complaint, Lead-Off alleged one count of promissory estoppel ("Count I") (ECF No. 3 ¶¶ 27–31), related to Congo's alleged repeated promises to Plaintiff that Congo would sign Lead-Off's standard distribution agreement (the "Distribution Agreement"); and one count of fraud ("Count II") (*id.* ¶¶ 32–37), related to Congo's alleged misrepresentations regarding the same. While this Court previously dismissed Lead-Off's original Complaint (ECF No. 3) due to a successful motion to dismiss (ECF No. 7) filed by Congo pursuant to Fed. R. Civ. P. 12(b)(6), the dismissal of Lead-Off's promissory estoppel claim was without prejudice and

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.  Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

1

with leave to Lead-Off to file an amended pleading.[2] (ECF Nos. 16; 17). After Lead-Off filed an Amended Complaint (ECF No. 18), Congo filed a Motion to Dismiss Amended Complaint (ECF No. 19) pursuant to Fed. R. Civ. P. 12(b)(6). Lead-Off responded in opposition (ECF No. 20), and Congo replied (ECF No. 21). The Court has reviewed the parties' submissions and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Congo's Motion to Dismiss Amended Complaint (ECF No. 19) is GRANTED. Quite simply, the proposed distribution agreements attached to the Amended Complaint were never signed by the Defendant. The proposed terms submitted by Lead-Off were never accepted by Congo and cannot constitute a definite promise supporting a common law promissory estoppel claim.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 18), and accepted as true for the purpose of the Defendant's Motion to Dismiss Amended Complaint (ECF No. 19).

I.  **Background on Parties**

Plaintiff Lead-Off Management, Inc. is a Maryland corporation with its principal place of business located in Columbia, Maryland. (ECF No. 18 ¶ 5.) "Lead-Off is an independent

---

[2] While the Court afforded Plaintiff the opportunity to file an amended pleading with respect to its promissory estoppel claim, the Court dismissed Plaintiff's fraud claim with prejudice, as Lead-Off was unable to form the proper basis of a fraud claim based on the facts alleged, and thus any amendment would not survive a motion to dismiss. (ECF No. 16 at 13–14.)

beverage distributor focused on growing and expanding the reach of new beverage brands." (*Id.* ¶ 7.)  "As a distributor, Lead-Off maintains several relationships with local retailers, including Giant Supermarkets in and around Howard County, Maryland." (*Id.* ¶ 8.)

Defendant Congo Brands Holding Co., Inc. is a Delaware limited liability company with its principal place of business in Louisville, Kentucky. (*Id.* ¶ 6.)  "Congo is a producer and supplier of energy drinks and other beverages." (*Id.* ¶ 9.)

## II.    Factual Background

According to Plaintiff, sometime in or around late 2020, Defendant Congo approached Plaintiff Lead-Off related to efforts to "expand Congo's brand presence in the region and gain access to Giant supermarkets in its Carlisle Division, which represented approximately 150 [Giant] stores." (*Id.* ¶ 10.)  Lead-Off alleges that its "standard practice is to enter a distribution agreement with suppliers" under such circumstances. (*Id.* ¶ 11.)  Accordingly, Lead-Off allegedly requested that Congo sign such an agreement, and Lead-Off alleges that "[r]epresentatives of Congo promised Lead-Off that it would enter into Lead-Off's standard [D]istribution [A]greement."[3] (*Id.* ¶¶ 11–12.)

Lead-Off alleges that it "made repeated inquiries as to the status of the Distribution Agreement and was repeatedly assured that an executed agreement would be forthcoming." (*Id.* ¶ 12; *see also id.* ¶ 18 (alleging that Defendant "made repeated promises that it would enter into Lead-Off's Standard Distribution Agreement, including its standard terms").)  Lead-Off further alleges that "[b]ased upon [Congo's] representations, Lead-Off continued to work to

---

[3] Lead-Off's standard Distribution Agreement is attached as an exhibit to the Amended Complaint. (ECF No. 18-1 at 3–12.)

ensure that Congo's brands would expand into Giant stores in the region and expended considerable resources and capital to do so." (*Id.* ¶ 19.) To support this claim, Plaintiff includes email correspondence between representatives from Lead-Off and Congo dated November 17 and 18, 2020 as an exhibit to the Amended Complaint. (ECF No. 18-1.) The provided correspondence shows that on November 17, 2020, Marty Jay ("Jay"), former Regional Sales Manager for Congo, emailed Gary Rezeppa and Morris Stodard ("Stodard"), Lead-Off's owners, providing dial-in information and participants for an upcoming call "to discuss Giant Carlisle" on November 19, 2020, and further requesting "a contract." (ECF No. 18-1.) The next day, Stodard replied, indicated he had attached Lead-Off's "standard contract," which he requested Jay "review" and indicated the parties would "discuss." (*Id.*)

Plaintiff alleges that, on March 1, 2021, "after much insistence," Lead-Off signed Congo's "Brokerage Agreement."[4] (ECF No. 18 ¶ 20.) In its Amended Complaint, Lead-Off once again emphasizes that it is a "distributor," "not a broker," (*id.* ¶ 20), and further states that the Brokerage Agreement "fails to establish compensation terms relevant to the relationship between the parties" and "does not contain any salient terms," (*id.* ¶ 21).

Plaintiff alleges that, as part of its continued effort to secure Congo's signature on the Distribution Agreement, "on or about April 1, 2021, Lead-Off shared a Congo-specific Standard Agreement."[5] (*Id.* ¶ 22.) Plaintiff alleges that this agreement "contained . . . clear and definite promises that Lead-Off understood Congo continued to agree to," such as a "nontransferable exclusive right to provide certain products (Alani Energy) in certain territory

---

[4] Plaintiff attaches a copy of the Brokerage Agreement to its Amended Complaint. (ECF No. 18-2.)
[5] Plaintiff attaches a copy of the Congo-specific Standard Agreement to its Amended Complaint. (ECF No. 18-3.)

(approximately 400 Giant stores in Landover, MD and Carlisle, PA), for a certain price per case ($14.25)." (*Id.* ¶¶ 24–25.)

Plaintiff further alleges that, despite not having a signed agreement, "[o]n or about April 1, 2021, the first Congo products were delivered to Giant stores" in the Carlisle Division. (*Id.* ¶¶ 10, 26, 33.)  According to Plaintiff, after working with and using Lead-Off's resources "for several months," "Congo severed the relationship [with] Lead-Off." (*Id.* ¶ 27.)  Lead-Off alleges that the parties "agreed" the Brokerage Agreement between them "was terminated on March 17, 2022." (*Id.* ¶ 28.)

Lead-Off alleges that, sometime "[s]hortly after the parties terminated the Brokerage Agreement, Congo encountered complications with Giant's management team and reapproached Lead-Off for guidance on how to navigate the situation." (*Id.* ¶ 29.)  According to Lead-Off, Plaintiff "agreed to continue servicing Giant and told [Congo that Plaintiff] would assist in getting the brands authorized in the Giant Landover [D]ivision." (*Id.*)  Lead-Off alleges that it "again asked that Congo enter into the Distribution Agreement," and Congo "promised" it would do so. (*Id.* ¶ 30.)  Plaintiff includes the names of four representatives that it claims were "aware of Congo's representations that Congo would sign the Congo Distribution Agreement." (*Id.* ¶ 31.)  These representatives include:

(1) Jay, who Plaintiff alleges "promised that Congo would enter into the Congo Distribution Agreement in November 2020[6] and was aware" of Congo's continued promises that it would do as much during his tenure with Congo;

(2) Billy Juarez, Congo's former President who is now deceased, who Plaintiff alleges "verbally agreed on or about [November 19, 2020] that Congo would

---

[6] The Court notes that the Congo-specific Distribution Agreement was not created until April 1, 2021, pursuant to the facts alleged in Plaintiff's Amended Complaint and the exhibit attached thereto. (ECF No. 18 ¶¶ 22–23; ECF No. 18-3.)

5

       sign the Congo Distribution Agreement and agree to the clear terms set forth therein," and further continued to make such promises, "including during an October 19, 2023[7] phone call with Stodard and Bob Miller, a representative from "MyMuse";

(3) Sam Wilson, former VP of Sales and Marketing at Congo, who Plaintiff alleges "was aware" of the promise; and

(4) Bob Matiecka, a Regional Director of Sales for Congo who took over Jay's role, who Plaintiff alleges "is aware that even after Mr. Jay left Congo, Congo continued to promise that it would sign the Congo Distribution Agreement and agree to the clear terms set forth therein."

(*Id.*)

      The Amended Complaint continues to allege that it "relied on Congo's representations and devoted substantial time and energy to aid Congo achieve its distribution goals," including getting Congo's brands into Giant stores' Landover Division, which accounted for an additional 150 stores. (*Id.* ¶¶ 32–33.) According to Plaintiff, "[b]ased on Congo's representations that it would enter the Distribution Agreement, Lead-Off continued purchasing and delivering products to Giant until October 2, 2023, when it was clear that Congo was no longer shipping product and that it had to sit on product it did have, creating a loss for Lead-Off." (*Id.* ¶ 34.) Lead-Off alleges that it forewent the opportunity to provide distribution services for other brands in order to service the volume generated by Congo, and alleges that it "took this step in reliance on the promises made by Congo that it would enter into a Distribution Agreement." (*Id.* ¶ 35.) According to Lead-Off, "Congo's former executives have acknowledged that Congo made promise after promise to enter into the Distribution Agreement, convinced Lead-Off to take certain actions in reliance on this

---

[7] The Court notes that the Amended Complaint proceeds to allege that Lead-Off ceased purchasing and delivering Congo products to Giant on October 2, 2023, "when it was clear that Congo was no longer shipping product and that it had to sit on product it did have, creating a loss for Lead-Off." (ECF No. 18 ¶ 34.)

promise and then never had any intention to enter into such an agreement." (*Id.* ¶ 36.) Lead-Off further claims to have "lost [a] gross profit of $756,258.00 for one (1) year . . . or $1,499,700.00 for two (2) years profit per the terms promised in the Congo Distribution Agreement, as well as lost opportunities and product it was not able to sell." (*Id.* ¶ 37.)

### III. Procedural History

On June 24, 2024, Plaintiff filed its original two-count Complaint in the Circuit Court for Howard County, Maryland, alleging one count of promissory estoppel related to Congo's alleged repeated promises to Plaintiff that Congo would sign Lead-Off's the Distribution Agreement and one count of fraud related to the same. (ECF No. 3.) On July 17, 2024, Defendant removed the case to this Court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) Defendant subsequently moved to dismiss Plaintiff's original Complaint pursuant to Rule 12(b)(6) (ECF No. 7), which was granted by this Court, (ECF Nos. 16; 17). While the Court afforded Plaintiff the opportunity to file an amended pleading with respect to its promissory estoppel claim, the Court dismissed Plaintiff's fraud claim with prejudice. (ECF No. 16 at 13–14.) After Lead-Off filed an Amended Complaint (ECF No. 18), Congo filed a Motion to Dismiss Amended Complaint (ECF No. 19) pursuant to Fed. R. Civ. P. 12(b)(6). Lead-Off responded in opposition (ECF No. 20), and Congo replied (ECF No. 21). The motion is fully briefed (ECF No. 20 (Lead-Off's Response); ECF No. 21 (Congo's Reply)) and is ripe for review.

## STANDARD OF REVIEW

### I. Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

II. **Applicable Law**

In its Amended Complaint, Plaintiff continues to pursue its common law promissory estoppel claim, over which this Court has diversity jurisdiction. 28 U.S.C. § 1332. "When choosing the applicable state substantive law while exercising diversity or supplemental

jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). Maryland is the forum state.

In contract type actions, of which a claim for promissory estoppel is one, *see Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Dep't of Transp.*, 5 A.3d 1174, 1226–27 (Md. App. 2010), *rev'd on other grounds*, 21 A.3d 1098 (Md. 2011), Maryland courts "apply the substantive law of the place where the contract was made," *Cont'l Cas. Co. v. Kemper Ins. Co.*, 920 A.2d 66, 69 (Md. App. 2007). The parties assume, albeit without discussion, that Maryland law applies to this claim. Accordingly, the Court applies Maryland law.

## ANALYSIS

Through its Amended Complaint, Lead-Off alleges one count of promissory estoppel related to Congo's alleged promises to Plaintiff that it would sign the Distribution Agreement. (ECF No. 18 ¶¶ 38–44.) Through Defendant's pending Motion to Dismiss Amended Complaint (ECF No. 19), Congo seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

To state a claim for promissory estoppel or detrimental reliance[8] under Maryland law, a plaintiff must allege:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

---

[8] "Maryland courts, which disapprove of the term 'promissory estoppel,' have incorporated the Restatement (Second) on Contracts to adopt the analogous doctrine of 'detrimental reliance[.]'" *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 348 (4th Cir. 2006) (citing *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)).

*Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 451 (D. Md. 2013), *aff'd sub nom. Goss v. Bank of Am.*, 546 F. App'x 165 (4th Cir. 2013) (quoting *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)). "Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise." *Id.* (quoting *Edell & Assocs., P.C. v. L. Offs. of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001)).

In granting Defendant's Original Motion to Dismiss (ECF No. 7) with respect to the first element of promissory estoppel, this Court explained that:

> [T]he only possible basis for Lead-Off's promissory estoppel claim is Congo's alleged repeated representations that it would sign the Distribution Agreement. This proves fatal to Count I, as the Court cannot find that there was a "clear and definite promise," i.e., "one that reasonably defines the contours of the action or forbearance," made to Lead-Off that Congo would sign the Distribution Agreement.

(*See* ECF No. 16 at 9 (quoting *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981))).) With respect to the second and third elements, the Court acknowledged that while there may be instances, however, when a party's reliance on an oral promise may be "unreasonable as a matter of law," (*id.* at 10 (quoting *200 N. Gilmor, LLC v. Cap. One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 491 (D. Md. 2012)), the Court expressed reluctance to say as much at the pleading stage, (*id.* (citing *D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 824 (D. Md. 2004)).[9] Similarly, with respect to the fourth element—whether Plaintiff had sufficiently

---

[9] In its reply, Lead-Off claims that this Court found "reasonable reliance . . . to have been satisfied." (ECF No. 20 at 3, 7.) The Court finds it prudent to make it clear that its prior Memorandum Opinion did *not* make a finding on the second, the third, nor the fourth elements of promissory estoppel. (ECF No. 16 at 9–10.) Rather, the Court explained its reluctance to dismiss Plaintiff's complaint for failure to sufficiently allege the second and third elements of promissory estoppel, as "[o]rdinarily, the matter of reasonableness of reliance is

10

asserted a resulting detriment that can only be avoided by the enforcement of the promise—the Court was reluctant to so find at the pleading stage. (*Id.* (citing *Pavel Enters.*, 674 A.2d at 532).) Nevertheless, the Court dismissed Count I without prejudice, providing Plaintiff leave to file an amended pleading with respect to its promissory estoppel claim.

In its Amended Complaint, Lead-Off includes new factual allegations that it claims demonstrates the existence of a "clear and definite promise." (*See* ECF No. 18.) In brief, Plaintiff's Amended Complaint includes the various versions Lead-Off drafted of the distribution agreement, (ECF Nos. 18-1 at 3–12; 18-3), as well as a November 2020 email wherein Congo's Regional Sales Manager requested a contract via email, (ECF No. 18-1 at 2). Additionally, Lead-Off includes the names of four representatives that it claims either promised Congo would sign the Distribution Agreement or were "aware of Congo's representations that Congo would sign the [Distribution Agreement]." (ECF No. 18 ¶ 31.)

Like the original Complaint, the Amended Complaint fails to allege facts sufficient to satisfy the first element of a promissory estoppel claim. As this Court has previously noted in *McKenzie*, there must be a clear and definite promise that "reasonably defines the contours of the action or forbearance. *McKenzie*, 393 F. Supp. 2d at 373 (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981)). Promissory estoppel cannot serve as a vehicle to bind Congo to a contract that Lead-Off proposed, but Congo did not sign. Lead-Off's continued insistence over a period of time lasting more than two years does not satisfy the criteria of promissory estoppel, particularly in light of the fact that Lead-Off and Congo executed a separate Broker

---

an issue reserved for the finder of fact," though there may be instances where a party's reliance on an oral promise may be "unreasonable as a matter of law." *200 N. Gilmor, LLC v. Cap. One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 491 (D. Md. 2012).

Management Agreement.[10]  As such, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 19) is GRANTED, and Plaintiff's Amended Complaint (ECF No. 18) is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 19) is GRANTED, and Plaintiff's Amended Complaint (ECF No. 18) is DISMISSED WITH PREJUDICE.

A separate Order follows.

Date: September 2, 2025                                     /s/
                                                            Richard D. Bennett
                                                            United States Senior District Judge

---

[10] The Broker Management Agreement, effective March 1, 2021 through March 17, 2022, and which Plaintiff resists by insisting "[it] is not a broker, but a distributor[,]" (ECF No. 18 ¶ 20), is attached as an exhibit to Plaintiff's Amended Complaint. (ECF No. 18-2.)  The final paragraph, entitled Entire Agreement, provides: "This Agreement constitutes the entire Agreement between the parties with regard to the subject matter hereof, superseding all prior understandings and agreements, whether written or oral.  This Agreement may not be amended or revised except by a writing signed by both of the parties hereto." (*Id.*)